NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E. LIGGON-REDDING,<br><br>           Plaintiff,<br><br>    v.<br><br>GENERATIONS, et al.,<br><br>           Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-3191 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

Before the Court is an emergency motion by Plaintiff E. Liggon-Redding to stay a state-court eviction process and to issue a gag order preventing the Defendants from "report[ing] to anyone anything that will jeopardize the plaintiff's quest to procure another apt." [Docket Item 4.] In this emergency motion, Plaintiff seeks to repudiate an agreement she signed on June 12, 2014, under which she agreed to move out of her apartment on July 5, 2014, wherein she also consents to entry of a judgment of eviction in the Superior Court of New Jersey.

In the present case, Plaintiff, representing herself and proceeding in forma pauperis, alleges in her Complaint that the employees at Harvest House Senior Apartments have discriminated against her on the basis of her disability, initiated wrongful

eviction proceedings against her, and violated her "Constitutional Right to peacefully assemble, vote for who we choose to represent us . . . ." [Compl. at 2, 4.] For the reasons explained below, the Court declines to order a stay of the eviction process and declines to issue a gag order.

    1.   The Court previously permitted Plaintiff's underlying Complaint to proceed in an Order filed on May 30, 2014. Plaintiff's Complaint contains only one and a half pages of factual allegations. By way of background, she alleges that she has experienced harassment and discrimination since moving to Harvest House Senior Apartments in 2008, and that employees there want to evict her. (Compl. at 1.) Plaintiff alleges that she needs a two-bedroom apartment because she is disabled and needs space for an overnight caregiver. (Id. at 2.) Some other tenants receive a discount on their rent. (Id.) She asserts that she was told she did not qualify for a discount because she had a two-bedroom apartment. (Id.) She therefore concludes that this amounts to discrimination on the basis of disability. (Id.) The Complaint contains other assertions that need not be repeated for present purposes of this emergency motion.

    2.   It is difficult for the Court to determine exactly what relief Plaintiff seeks from this Court. In a section of the Complaint labeled "Cause of Action," Plaintiff states:

> The Plaintiff is so tired of being Discriminated against by these individuals all her pleas for relief have fallen on deaf ears. The fact that they feel they can violate our Constitutional Right to peacefully assemble, vote for who we choose to represent us and treat us differently because we are disabled has to stop.

(Id. at 4.) Plaintiff demands that the Court "Order the Defendants to Cease and Desist their behavior towards her forthwith and If they do not a Jury Trial and One and One Half Million Dollars, in Punitive and Compensatory Damages." (Id. at 4-5.) The Court liberally construes Plaintiff's Complaint as attempting to allege a violation of her federal constitutional rights and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(f)(2)(A) & 3613 (prohibiting discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person"), among other possible state-law claims. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

  3. Plaintiff's emergency motion states that on April 3, 2014, Defendants negotiated with Plaintiff's attorney to create a payment plan and permitted Plaintiff to remain in her apartment. (Pl. Mot. at 10-11.) Plaintiff asserts that on April 4, 2014, she "paid the amount discussed between their attorney

3

and her attorney." (Id. at 11.) A few days later, Plaintiff received a letter from Ms. Killing refusing Plaintiff's "partial payment" of $1,328 and demanding full payment of her outstanding balance, $3,460. [Docket Item 4 at 3.] Plaintiff alleges that she was "forced to sign" a "Consent to Enter Judgment for Possession (Tenant Vacates)" in order "to procure extra time to move," although she also asserts that she was represented by counsel at that time. (Id. at 11; Docket Item 4 at 4.) The date by which Plaintiff must vacate the apartment appears to be "7-5-14." Plaintiff concludes that she "does not want Defendent [sic] to be allowed to submit negative information to anyone that may hinder her chances of now having to procure another apt." (Pl. Mot. at 11.)

    4.   The Court observes that no defendants have been served yet in this matter, however Plaintiff asserts that she has taken every step required of her to effectuate service: "Forms hand delivered to Marshals for Service on Defendents [sic] June 5, 2014." (Id. at 11.) Service of process often takes time because of the competing duties of the U.S. Marshals, so it would not be surprising if service of process takes several weeks or more. The Court is unaware whether Plaintiff has served Defendants with a copy of this emergency motion, and no response has been received. In the interest of a timely resolution of this motion, the Court addresses this emergency motion and concludes that a

stay of the state-court proceedings and a gag order are inappropriate in this case.

    5.    Generally, federal courts "lack the authority to stay any state court proceedings, including Eviction Actions." Riddhi Sub. LLC v. One Exch. JC LLC, No. 12-42, 2012 WL 33903, at *2 (D.N.J. Jan. 6, 2012); see also Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 297 (1970) ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."). The Anti-Injunction Act provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Here, there is no allegation that any federal statute expressly authorizes the Court to stay the state-court proceedings. See Hemlock Crossing, LLC v. Logal Twp., No. 07-26, 2007 WL 1203015, at * (W.D. Pa. Apr. 23, 2007) (citing Casa Marie, Inc. v. Super. Ct. of P.R., 988 F.2d 252, 262 (1st Cir. 1993), for the proposition that "the FHA does not constitute an express exception to the Anti-injunction Act"); United States v. Billingsley, 615 F.3d 404, 410 (5th Cir. 2010) (concluding that neither a private individual nor the government bringing an FHA

5

claim would enjoy an exception to the Anti-Injunction Act); 42 U.S.C. § 3613 (providing for private enforcement of the FHA, but stating no express exception to the Anti-Injunction Act).

    **6.**    Nor is an injunction necessary to aid federal jurisdiction or to protect or effectuate the Court's judgments. See <u>Jos. L. Muscarelle, Inc. v. Cent. Iron Mfg. Co.</u>, 328 F.2d 791, 794 (3d Cir. 1964) ("If the enjoined state proceeding could not prejudice any otherwise proper disposition of some claim pending in the federal suit, the injunction cannot be in aid of invoked federal jurisdiction."). Although Plaintiff's demand for relief is vague, the Complaint cannot be reasonably construed to request an injunction for the Defendants to offer Plaintiff a discount on her rent to stay in her current apartment. Plaintiff states that what "prompted" her to file this action was Ms. Tawana Killing, the apartment building's manager, telling tenants that Plaintiff could not be president of the tenants' association because she did not get along with management, and the resulting allegedly retaliatory eviction. (Compl. at 2-3.) In this emergency motion, Plaintiff concludes by saying she does not want Defendants to be allowed to say anything that would "hinder her chances" of securing a new apartment. (Pl. Mot. at 11.)

    **7.**    Simultaneously, Plaintiff demands $1.5 million in damages. The Court is satisfied that even if Plaintiff

ultimately prevails on her claim for an illegal eviction or an FHA claim brought under 42 U.S.C. § 3613, a damage award could provide an adequate remedy for her injury. As "this action cannot result in any judgment which would be impaired or made less effective by" any outcome in the state-court eviction proceeding, the Anti-Injunction Act bars the Court from enjoining Plaintiff's eviction proceeding in state court. Jos. L. Muscarelle, 328 F.2d at 794.

8. The eviction court is the competent and appropriate forum for Plaintiff to challenge the consent agreement she signed and to raise any defenses to prevent her eviction. Eviction proceedings are peculiarly a creature of state law, implicating substantial state interests. The "Consent to Enter Judgment for Possession" that Plaintiff signed last week and attacks this week is itself captioned in the Superior Court of New Jersey, Law Division, Special Civil Part, Camden County. Adjudication of the claims before this Court is not affected by the eviction proceeding, and, likewise, Plaintiff does not require the assistance of this Court to vindicate her rights in her eviction proceeding. The Court declines to stay the eviction proceedings in state court.

9. The Court also declines to issue a gag order. A gag order is a prior restraint on speech that implicates First Amendment rights and is subject to a heavy presumption against

7

its constitutional validity. United States v Scarfo, 263 F.3d 80, 92 (3d Cir. 2001); Org. for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971); Marceaux v. Lafayette City-Parish Consol. Gov't, 731 F.3d 488, 492-94 (5th Cir. 2013). In general, gag orders are designed to prevent the parties or lawyers from disseminating information that is confidential or otherwise prejudicial to the judicial proceedings. Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 135, 146 (D.N.J. 1998); Scarfo, 263 F.3d at 92. Here, Plaintiff requests an order preventing Defendants from "submit[ting] negative information to anyone that may hinder [Plaintiff's] chances" of securing a new apartment. (Pl. Mot. at 11.) Such an order would be "a forbidden intrusion on the field of free expression" and unconstitutional under the First Amendment. Scarfo, 263 F.3d at 91.

10. Plaintiff does not seek to restrict speech that has a "substantial likelihood of material prejudice" to this proceeding, id. at 93 (quoting Gentile v. State Bar of Nev., 501 U.S. 1030 (1991)), nor does she seek to prohibit dissemination of confidential information. Rather, Plaintiff seeks to gain a private benefit by restricting the free speech of Defendants, without serving any articulable public interest. The requested gag order would prevent the dissemination of any "negative information" about Plaintiff, even if that information were truthful. Defendants, like all citizens, are subject to

8

defamation laws, which should adequately protect Plaintiff's interests. Plaintiff has not identified any harm sufficient to support a prior restraint on Defendants' speech.

11. The Court denies Plaintiff's motion for a stay of state-court eviction proceedings and denies Plaintiff's motion for a gag order against Defendants. An accompanying Order will be entered.


**June 19, 2014**                           **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                                   Chief U.S. District Judge